## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| ROBERT THOMAS MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-990 |
| | § | |
| CARRINGTON MORTGAGE SERVICES, | § | With Jury Demand Endorsed |
| LLC and WVMF FUNDING, LLC, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Robert Thomas Moore ("Plaintiff"), by and through counsel, and for his Complaint against Defendants Carrington Mortgage Services, LLC ("Carrington") and WVMF Funding, LLC ("WVMF"), states as follows:

### I. INTRODUCTION

1.      Plaintiff asserts causes of action against Defendants based on his claims Defendant Carrington, as a successor mortgage servicer, and Defendant WVMF, as the owner of the note and deed of trust in question, engaged in willful and malicious actions against him in furtherance of Defendants' efforts to collect a debt from Plaintiff that was included in and discharged in his subject bankruptcy case.  This is the fourth lawsuit Plaintiff has had to file to get the noteholder and servicers of this mortgage indebtedness to stop violating the bankruptcy discharge and other state and federal laws.  These actions are part of such lienholder's and servicer's policies, procedures and illegal design to profit financially from unsophisticated debtors by harassing them, getting them to take action to benefit themselves, and collecting debts included and discharged in the respective bankruptcy cases.

2.      Specifically, Plaintiff brings claims against Defendants for violating: 1) 15 U.S.C. § 1692 *et seq.,* known as the Fair Debt Collection Practices Act (the "FDCPA"); 2) the Tex. Fin. Code § 392.001 *et. seq.,* known as the Texas Debt Collection Act ("TDCA"); 3) Plaintiff's common law privacy rights; and 4) the discharge injunction of the United States Bankruptcy Court of the Northern District of Texas, Dallas Division.  Plaintiff seeks to recover actual, statutory, and punitive damages, and legal fees and expenses against Defendants.

## II. PARTIES

3.      Plaintiff is a natural person residing in Collin County, Texas and is a "consumer" as defined by the TDCA, Tex. Fin. Code § 392.001(1), and the FDCPA, 15 U.S.C. § 1692a(3).

4.      Defendant Carrington is a foreign limited liability company and may be served by delivering a summons to its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-4234.

5.      Defendant WVMF is a foreign limited liability company and be served by delivering citation to its registered agent, c/o Corporation Service Company, 80 State Street, Albany, New York, 12207-2543.

6.      Defendants are "persons" and "creditors," "debt collectors" and/or "third-party debt collectors," under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7), and the FDCPA, 15 U.S.C. § 1692(6).

7.      The debt at issue that Defendants were attempting to collect from Plaintiff was a "consumer debt" as defined by Tex. Fin. Code § 392.001(2) and 15 U.S.C. § 1692, the TDCA and FDCPA.

## III. JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334, and 15 U.S.C. §§ 1681p and 1692, *et seq.*

9.      Venue in this District is proper because Defendants transact business in this District, Plaintiff resides in this District, and much of Defendants' conduct occurred in this District.

## IV. FACTUAL ALLEGATIONS

**A.      The Subject Debt Was Included and Discharged in Plaintiff's Bankruptcy Case and Plaintiff Surrendered and Vacated the Collateral/Property.**

10.      On September 29, 2009, prior to Plaintiff filing his Bankruptcy Case, GMAC Mortgage LLC ("GMAC") had acquired title to a note and deed of trust on Plaintiff's homestead at 238 Pecos Trail, Crossroads, Denton County, Texas (the "Property") by assignment from Amerigroup Mortgage Corporation.  Such note was a consumer debt Plaintiff owed requiring him to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof, and the same were primarily for personal, family, or household purposes.

11.      A true and correct redacted copy of the September 29, 2009 assignment is attached hereto as Exhibit "A."

12.      On November 2, 2009, Plaintiff filed for bankruptcy under Chapter 13 of the U.S. Bankruptcy Code in case number 09-37490-sgj13 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

13.      In his Bankruptcy Case, the GMAC claim was listed in Schedule "D" as a secured claim, secured by a lien on the Property identified as Loan No. XXX8172 (the "Loan" or "Account").

14.      A true and correct copy of Plaintiff's Schedule "D" filed with his Petition in his Bankruptcy Case is attached hereto as Exhibit "B."

15.      Also, on November 2, 2009, Plaintiff filed a mailing matrix with his Petition in his Bankruptcy Case, which provided GMAC's correct address, and he filed his Chapter 13 Plan.

16.     On November 5, 2009, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") for the Bankruptcy Case by first class mail to GMAC.  The 341 Notice warned all creditors in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362. The United States Postal Service did not return the 341 Notice sent to GMAC, so there is a presumption it was received.

17.     On November 20, 2009, GMAC filed a fully secured proof of claim for $122,395.24 ("Proof of Claim") in the Bankruptcy Case, and at no time during the administration of the case did GMAC assert a deficiency claim.

18.     A true and correct copy of page 1 of GMAC's Proof of Claim is attached hereto as Exhibit "C."

19.     On January 28, 2010, Plaintiff's Chapter 13 Plan was confirmed with the arrearage for the debt at issue to be paid through Plaintiff's Chapter 13 Plan to the Trustee and the current payments to be made directly to GMAC.

20.     Almost a year later, GMAC filed a motion for relief from stay of action against the Property ("Motion") in the Bankruptcy Case on December 16, 2010, and Plaintiff and GMAC signed an agreed order for the Motion, which was, in turn, signed and entered by the Bankruptcy Court on February 2, 2011.

21.     A true and correct copy of the Agreed Order is attached hereto as Exhibit "D."

22.     On July 24, 2013, Plaintiff filed Debtor's Modification of Plan after Confirmation ("Modified Plan") in his Bankruptcy Case which noted his surrender of the Property.

23.     A true and correct redacted copy of Plaintiff's Modified Plan is attached hereto as Exhibit "E" and incorporated herein by reference.

24.     On September 19, 2013, the Bankruptcy Court approved Plaintiff's Modified Chapter 13 Plan and Plaintiff permanently vacated the Property.

25.     On or about September 30, 2014, GMAC assigned the servicing rights for the Account to Ocwen Loan Servicing, LLC ("Ocwen").

26.     On November 10, 2014, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein).  The order discharged Plaintiff from any liability for the subject pre-petition claim.  Included with the Discharge Order was an explanation of the general injunction prohibiting those holding pre-petition claims from attempting to collect those claims. The Discharge Order and its notice warned all creditors in conspicuous language that "**<u>Collection of Discharged Debts Prohibited</u>**" and that "a creditor is not permitted to contact a debtor by mail, phone, or otherwise…or take any other action to collect a discharged debt from the debtor."

27.     On November 12, 2014, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to GMAC by first class mail, which was not returned; these mailings constituted notice to GMAC of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a).

28.     A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "F."

29.     At no time during the pendency of the Bankruptcy Case did Ocwen, GMAC or any other person or entity object to or dispute the details of the subject claim contained in Schedule "D" to Plaintiff's Petition filed in his Bankruptcy Case.

30.     At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm the subject debt with any person or entity.

31.     At no time during the pendency of Plaintiff's Bankruptcy Case was the subject pre-petition claim declared to be non-dischargeable by the Bankruptcy Court.

**B.      Post-Discharge, the Account is Transferred Repeatedly and Plaintiff Filed Multiple Lawsuits to Stop Ongoing Harassing Collection Attempts on the Discharged Debt.**

32.     By March 18, 2016, after the debt and Account had been discharged, Plaintiff believed Ocwen had violated the Fair Credit Reporting Act, Fair Debt Collection Practices Act, Texas state law, the automatic stay and discharge injunction of 11 U.S.C § 524.  Accordingly, Plaintiff filed a lawsuit styled *Robert Thomas Moore v. Ocwen Loan Servicing, LLC,* in the United States District Court for the Northern District of Texas, Dallas Division, Case No. 3:16-cv-0785-L (the "Ocwen Action").

33.     On or about October 31, 2016, Ocwen sent Plaintiff a "NOTICE OF SERVICING TRANSFER" indicating that the Account has been transferred to LoanCare, LLC ("LoanCare") effective November 1, 2016 and directing all future payments be sent to LoanCare.

34.     A true and correct redacted copy of the October 31, 2016 letter is attached hereto as Exhibit "G."

35.     In early February 2017, the homeowners' association for the Property, Cross Oak Ranch HOA, Inc. ("HOA"), acquired title to the Property by foreclosing on its assessment lien for unpaid homeowner association dues.

36.     On February 13, 2017, a Trustee's Deed for the Property was recorded with the Denton County Clerk, Real Property Records, showing title on the Property transferring from the HOA to a third party, the Pecos Trust.

37.     A true and correct redacted copy of the 2017 Deed is attached hereto as Exhibit "H."

38.     On or about March 9, 2017, Plaintiff and Ocwen settled the Ocwen Action which resolved all Plaintiff's claims and the case was dismissed.

39.     On or about May 19, 2017, the Deed of Trust securing the Account in question was assigned to Defendant WVFM Funding, LLC.

40.     A true and correct redacted copy of the Assignment of Deed of Trust is attached hereto as Exhibit "I."

41.     On July 20, 2017, Plaintiff filed a lawsuit against LoanCare styled *Robert Thomas Moore v. LoanCare, LLC*, Civil Action No. 3:17-cv-01935-C, in the United States District Court for the Eastern District of Texas, Sherman Division (the "LoanCare Action"), asserting claims for, *inter alia*, violations of the Fair Credit Reporting Act, the Texas Debt Collection Practices Act, the discharge injunction under the Bankruptcy Code, and invasion of privacy.

42.     On or about March 26, 2018, Plaintiff received a Notice of Servicing Rights Change advising Plaintiff that the servicing of the loan has been transferred to Statebridge Company, LLC ("Statebridge") and directing that all future payments be made to them.

43.     A true and correct redacted copy of the March 26, 2018 notice is attached hereto as Exhibit "J."

44.     On or about April 29, 2018, LoanCare and Plaintiff settled the LoanCare Action resolving all outstanding issues at that time and the case was dismissed.

45.     Even after the settlement of the two lawsuits for alleged violations of state and federal laws, Plaintiff was still being harassed on his Account by servicers.  On or about July 19, 2018, Plaintiff filed a third lawsuit, this one against Statebridge styled *Robert Thomas Moore v. Statebridge Company, LLC*, Case No. 4:18-cv-516, in the United States District Court for the Eastern District of Texas, Sherman Division (the "Statebridge Action"), asserting claims for, *inter*

*alia*, violations of the Fair Credit Reporting Act, the Texas Debt Collection Practices Act, the discharge injunction under the Bankruptcy Code, and invasion of privacy.

46.     On December 5, 2018, WVMF filed an Appointment of Substitute Trustee and on or about December 31, 2018, WVMF accelerated the Note and declared all unpaid sums immediately due and payable.

47.     A true and correct copy of the Appointment of Substitute Trustee is attached hereto as Exhibit "K."

48.     On or about April 3, 2019, Statebridge and Plaintiff resolved all outstanding issues at that time and the Statebridge Action was also dismissed.

49.     On October 4, 2019, WVMF filed its **NOTICE OF RESCISSION OF ACCELERATION** (the "Rescission") of the Note.  In such document filed in the Deed Records of Denton County, Texas, Defendant WVMF represented that: *"After acceleration, Borrower requested, and Lender agreed to provide, an opportunity for Borrower to fully cure the default (or defaults) giving rise to the acceleration."*  This representation was material, malicious, false, fraudulent, defamatory and intentionally made for the sole benefit of WVMF.  Defendant WVMF knew that: 1) the Property had long ago been surrendered and that the debt was discharged as to Plaintiff's personal liability; 2) Plaintiff no longer had legal title to the Property since it had been foreclosed by the homeowner's association in 2017; 3) three lawsuits had been filed by Plaintiff to stop its previous servicers from violating the discharge injunction as well as many other state and federal statutes; and 4) all of the previous lawsuits had been settled by the time it filed this legal instrument in the Deed Records of Denton County, Texas for the public to read.  The document alleged erroneously that Plaintiff was still liable on the Note and Account and actively trying to modify the loan to bring it current.  This assertion was in contravention of Plaintiff's

representations to the Bankruptcy Court in his schedules and other pleadings and would lead the reader to think he had violated the law.

50.    A true and correct copy of the October 4, 2019 notice is attached hereto as Exhibit "L."

**C.    Years after the Surrender of the Property, Plaintiff's Bankruptcy Discharge, the filing and Settlement of the Ocwen Action, the LoanCare Action, and the Statebridge Action, Carrington Acquired the Servicing Rights on the Subject Loan and its Discharged Debt and Began to Harass Plaintiff and Attempted to Collect the Subject Discharged Debt from Him.**

51.    After the Account was discharged and after three lawsuits had been settled between predecessor servicers, Defendant Carrington acquired the servicing rights on the Loan and immediately began engaging in similar debt collection activities against Plaintiff by requesting personal information from Plaintiff, sending threatening letters and statements as if the debt was still owed.

52.    On or about October 1, 2020, Defendant Carrington acquired the servicing rights on the Loan and began servicing the discharged debt, as evidenced by the Notice of Mortgage Servicing Transfer letter Defendants sent to Plaintiff on or about October 14, 2020.

53.    A true and correct redacted copy of the Servicing Transfer letter dated October 14, 2020 Carrington sent to Plaintiff is attached hereto as Exhibit "M" and incorporated herein by reference.

54.    On or about October 9, 2020, Carrington sent Plaintiff a Monthly Mortgage Statement for the Account misrepresenting that the Amount Due is $93,914.56 and providing a coupon and return envelope to expedite payment of this amount which is alleged to be due by 11/01/20, even though the Property had been surrendered and the debt discharged many years earlier.  The statement goes on to misrepresent that Plaintiff is liable for a monthly payment of $860.66, that there are overdue payments of $89,508.64, total fees charged of $3,545.26, a

Principal Balance of $110,887.15, and an Escrow Balance of -$38,154.51.  A warning is also listed

in a portion of the bill entitled "DELINQUENCY INFORMATION" stating "You are late on your

mortgage payments.  Failure to bring your loan current may result in fees and foreclosure - the loss

of your home.  As of 10/09/20 you are 3144 days delinquent on your mortgage."  This statement

also included a "**MINI MIRANDA,**" stating: "This communication is from a debt collector and it

is for the purpose of collecting a debt and any information obtained will be used for that purpose"

(hereinafter referred to as a "Mini Miranda"), even though the Property had been surrendered many

years earlier and the debt and Account discharged.  In addition, the Notice warned Plaintiff:  "We

may report information about your account to credit bureaus.  Late payments, missed payments,

or other defaults on your account may be reflected on your credit report.  As required by law, you

are hereby notified that a negative credit report reflecting on your credit record may be submitted

to a credit reporting agency if you fail to fulfill the terms of your credit obligations," (hereinafter

referred to as a "Credit Reporting Warning").

> 55.     A true and correct redacted copy of the statement dated October 9, 2020 Carrington

sent to Plaintiff is attached hereto as Exhibit "N."

> 56.     On or about October 9, 2020, Carrington sent Plaintiff a Servicemembers Civil

Relief Act Notice Disclosure containing both a Mini Miranda and Credit Reporting Warning, even

though the Property had been surrendered many years earlier and the debt and Account discharged.

> 57.     A true and correct redacted copy of the notice dated October 9, 2020 Carrington

sent to Plaintiff is attached hereto as Exhibit "O."

> 58.     On or about October 13, 2020, Carrington sent Plaintiff a delinquency letter

misrepresenting that Plaintiff had an open mortgage account threatening foreclosure and advising

of loss mitigation options, including both a Mini Miranda and Credit Reporting Warning, even

though Carrington knew that Plaintiff did not qualify for any loss mitigation options as the Property had been surrendered years earlier and the debt and Account discharged.

59.     A true and correct redacted copy of the letter dated October 13, 2020 Carrington sent to Plaintiff is attached hereto as Exhibit "P."

60.     On or about October 15, 2020, Carrington sent Plaintiff a letter requesting insurance information for the Property even though Plaintiff was no longer in its possession, having surrendered the Property years earlier, and the debt had been discharged.  The letter went on to warn that Carrington would be forced to buy lender-placed insurance if such proof was not forthcoming and that the cost would be added to the Account.  This letter also contained both a Mini Miranda and Credit Reporting Warning, even though the Property had been surrendered many years earlier and the debt and Account discharged.

61.     A true and correct redacted copy of the letter regarding hazard insurance dated October 15, 2020 Carrington sent to Plaintiff is attached hereto as Exhibit "Q."

62.     On or about November 16, 2020, Carrington sent Plaintiff a follow-up letter regarding its requesting insurance information for the Property warning that $1,197.60 would be the cost of lender-placed and that it might not provide as much coverage as a policy bought by the Plaintiff.  This letter also contained both a Mini Miranda and Credit Reporting Warning, even though the Property had been surrendered many years earlier and the debt and Account discharged.

63.     A true and correct redacted copy of the Notice dated November 16, 2020 Carrington sent to Plaintiff is attached hereto as Exhibit "R."

64.     On or about December 7, 2020, Carrington sent Plaintiff a third letter, this time advising the insurance on the Property had expired and that it had bought lender-placed insurance and the cost would be added to Plaintiff's Account even though Plaintiff had never had an account with Defendant, had surrendered the Property and the mortgage debt had been discharged.  This

letter also contained both a Mini Miranda and Credit Reporting Warning, even though the Property had been surrendered many years earlier and the debt and Account discharged.

65.     A true and correct redacted copy of the letter dated December 7, 2020 Carrington sent to Plaintiff is attached hereto as Exhibit "S."

## V.  GROUNDS FOR RELIEF - COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

66.     Plaintiff repeats, re-alleges, and incorporates by reference all of the above paragraphs as if fully rewritten here.

67.     The FDCPA is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties.  *See* 15 U.S.C. § 1692, *et seq*.  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  *See* 15 U.S.C. §1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

68.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action.  The substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. §1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.  And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. §1692f.  The FDCPA is designed to protect

consumers from unscrupulous collectors, whether or not there exist a valid debt, broadly prohibits

unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any

debtor, and any false, deceptive or misleading statements in connection with the collection of a

debt.

69.     In enacting the FDCPA, the United States Congress found "[t]here is abundant

evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt

collectors," which "contribute to the number of personal bankruptcies, to marital instability, the

loss of jobs, and to invasions of individual privacy."  15 U.S.C. §1692a.  Congress additionally

found existing laws and procedures for redressing debt collection injuries to be inadequate to

protect consumers.  *See* 15 U.S.C. §1692b.

70.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt

collectors.  The express purpose of the FDCPA is to "eliminate abusive debt collection practices

by debt collectors, to ensure debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses."  15 U.S.C. §1692e.

71.     The FDCPA is a strict liability statute, which provides for actual and statutory

damages upon the showing of a single violation.  Also, the FDCPA is a remedial statute, and

therefore must be construed liberally in favor of the debtor/consumer.

72.     The FDCPA is to be interpreted in accordance with the "least sophisticated

consumer" standard.  *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano

v. Harrison*, 950 F.2d 107, 111, fn5 (3rd Cir. 1991).  The FDCPA was not "made for the protection

of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and

the credulous, and the fact that a false statement may be obviously false to those who are trained

and experienced does not change its character, nor take away its power to deceive others less experienced." *Id*.

73.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain per se violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692e(1)-(16).

74.     The collection actions at issue of Defendant Carrington sending Plaintiff the subject statements, notices and letters, described hereinabove, violate 15 U.S.C. §1692e(2)(A) and 15 U.S.C. § 1692f(1).

75.     Defendants' actions described hereinabove are the manifestations of its practices and policies to ignore the provisions of the Bankruptcy Code applicable to it and illegally collect or attempt to collect discharged debts from unsophisticated discharged debtors.

## VI.  GROUNDS FOR RELIEF - COUNT II

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

76.     Plaintiff repeats, re-alleges, and incorporates by reference all of the above paragraphs as if rewritten herein their entirety.

77.     Defendants have violated the Texas Finance Code in numerous ways including, but not limited to, the following:

  a)    Tex. Fin. Code § 392.301(a)(8), which prohibits Defendants from taking an action prohibited by law; the bankruptcy discharge injunction prohibits attempting to collect debts discharged in bankruptcy *in personam*; and the common law protects Plaintiff's privacy rights; Defendants' actions at issue, including the sending of the statements, notices and correspondences at issue to Plaintiff to harass and coerce payment from him also violated the TDCA;

  b)    Tex. Fin. Code § 392.304(a)(3), which prohibits representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer, since

Defendants were soliciting Plaintiff for modifications of the Loan, post-discharge (as evidenced by the letters at issue) after Plaintiff had surrendered and vacated the Property, when Defendants knew Plaintiff did not qualify for a modification since he was not residing in the Property; thus, Defendants made such solicitations to deceptively acquire Plaintiff's personal and confidential information to further its collection attempts on the discharged debt against Plaintiff;

c)   Tex. Fin. Code § 392.304(a)(8), which prohibits misrepresenting the character, extent, or amount of Plaintiff's debt, it misrepresented to Plaintiff that the Account was past due and owing and that he might qualify for a modification of the Loan, after he had surrendered and vacated the Property and did not qualify for such modification and the subject debt was discharged, these were misrepresentations of the character, extent or amount of the subject debt in violation of the TDCA;

d)   Tex. Fin. Code § 392.304(a)(13), which prohibits representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges, as here, 11 U.S.C. §524(a) prohibited Defendants from collecting on the Account post-discharge based on the discharge of the debt in Plaintiff's Bankruptcy Case and the discharge injunction being in effect and as evidenced by the mortgage statements at issue that Defendants sent to Plaintiff threatening to assess a late charge if the demanded payments were not made by the specified due date; and

e)   Tex. Fin. Code § 392.304(a)(19), which prohibits Defendants' use of false representations or deceptive means to collect a debt, for the same reasons stated in the preceding paragraphs (a-d), and as evidenced by Defendants' force-placed hazard insurance letters representing that Plaintiff was responsible for insuring the Property or paying Defendants for insurance it purchased for the Property, long after Plaintiff had surrendered and vacated the Property, Defendants was deceptively trying to coerce Plaintiff into paying the subject debt when it knew it was discharged in bankruptcy and legally uncollectible from Plaintiff *in personam* at all times at issue.

78.   Under Tex. Fin. Code Ann. § 392.403, Defendants' actions at issue make it liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees under the TDCA. Also, Plaintiff's injuries resulted from Defendants' malice, and/or actual fraud which entitle Plaintiff to punitive damages.

79.   Due to Defendants' conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII.  GROUNDS FOR RELIEF - COUNT III

### INVASION OF PRIVACY

80.     Plaintiff repeats, re-alleges, and incorporates by reference all of the above paragraphs as if rewritten herein their entirety.

81.     Defendants were forbidden from attempting to collect on the subject discharged debt from Plaintiff, and Plaintiff had a reasonable and lawful expectation to not be contacted and harassed by Defendants in furtherance of its attempts to coerce payment from Plaintiff on the subject discharged debt.  Thus, by WVMF's filing of the Rescission and by Carrington's sending Plaintiff the post-discharge statements, notices and letters, Defendants also violated Plaintiff's privacy rights.  The wrongful acts of Defendants caused injury to Plaintiff.

82.     Plaintiff's injuries resulted from Defendants' malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VIII.  GROUNDS FOR RELIEF- COUNT IV

### VIOLATION OF THE DISCHARGE INJUNCTION

83.     Plaintiff repeats, re-alleges, and incorporates by reference all of the above paragraphs as if set forth herein in their entirety.

84.     At all times material to this proceeding, Defendants had actual knowledge about Plaintiff's Bankruptcy Case and the discharge of the debt at issue.

85.     Defendant Carrington, post-discharge, acquired the servicing rights on the Account and attempted to collect on the subject discharged debt from Plaintiff personally, on behalf of WVMF, as evidenced by its mortgage statements, letters and notices at issue that it sent to Plaintiff to harass and try to coerce him into paying the subject discharged debt or take actions to coerce payment and financially benefit Defendants related to the discharged debt.

86.     Defendants' aforesaid actions were willful acts and constitute efforts to collect the discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a).  Further, Defendants' acts were harassing and attempts to coerce Plaintiff to pay the subject discharged debt. Defendants' failure to comply with the aforesaid laws, in light of being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of the discharge, illustrates its contempt for federal law and the discharge injunction.

87.     The collective actions of Defendants at issue constitute harassment and coercive actions taken to collect on the subject discharged debt from Plaintiff and were gross violations of the discharge injunction as set forth in 11 U.S.C. §524(a)(1)-(3).

88.     The facts and background stated above demonstrate that Defendants willfully violated the orders and injunctions of the Bankruptcy Court as they concern the bankruptcy filed by Plaintiff.  With this prima facie showing, the duty is on Defendants to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.  Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on his claims, and Defendants must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendants.  Any allegation of a good faith exception should not be allowed.

89.     Specifically, Defendants violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived…"

-17-

90.     No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendants at issue with regard to the discharge injunction, as stated above.

91.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint.  None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case, as pertaining to the rights and remedies of Defendants.

92.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court.  Any attempt to burden Plaintiff with policing the misconduct of Defendants would be a complete derogation of the law.  It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance.  Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.  Any defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendants.  No allegation of a mitigation as a defense should be allowed.

93.     Plaintiff has been injured and damaged by Defendants' actions at issue and is entitled to recover judgment against Defendants for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX.  RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

144.     At all relevant times, Carrington acted as the agent of WVMF and WVMF is responsible for Carrington's actions.  After a reasonable time to conduct discovery in this case,

Plaintiff believes he will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendants in the line and scope of such individuals' (or entities') empress or implied authority, through employment, agency, or representation, which imputes liability on Defendants for all actions at issue under a theory of *respondeat superior* and/or vicarious liability.

## X. DAMAGES

145.    In addition to damages previously stated hereinabove, the conduct of Defendants at issue has proximately caused Plaintiff past and future monetary loss, past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state and other damages, evidence for which will be presented to the jury.   Moreover, dealing with the consequences of Defendants' actions at issue has used Plaintiff's time and mental energy, which are precious to him.

94.    At all relevant times, Defendants knew, and continue to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer legally collectible, but Defendants have made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to attempt to collect and deceptively collect on the subject discharged debt after the discharge of the subject debt in Plaintiff's Bankruptcy Case.  Moreover, there was never a debtor-creditor relationship between the parties and Defendants had no right to engage in its actions at issue.

95.    After a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendants in the line and scope of such individuals' (or entities') employment, agency, or representation and under the doctrine of *respondeat superior,* Defendants is liable for their acts performed with regard to Plaintiff, the Account and subject discharged debt.

96.     After a reasonable time to conduct discovery, Plaintiff believes he will be able to show that all actions taken by Defendants at issue were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

97.     At all relevant times, Defendants knew, and continue to know, that a debt included in bankruptcy or discharged in bankruptcy, means those debts are not legally collectible, but Defendants have made a corporate decision to willfully and maliciously act contrary to their knowledge in their calculated decision to violate Plaintiff's legal rights.

98.     After a reasonable time for discovery, Plaintiff believes he will be able to show that despite Defendants receiving dozens, if not hundreds, of disputes complaining about the types of actions at issue, Defendants intentionally and knowingly have not corrected their policies of engaging in these actions.

99.     After a reasonable time for discovery, Plaintiff believes he will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its policies and procedures, with respect to willfully, intentionally, and maliciously attempting to collect on debts included in and discharged in bankruptcy.  Accordingly, Defendants are subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendants and similar companies.  Moreover, Plaintiff's injuries resulted from Defendants' malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

100.    Due to Defendants' conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting his claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Robert Thomas Moore prays the Court will:

A.      Enter judgment in favor of Plaintiff and against Defendants for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for violations of the FDCPA, the TDCA, Plaintiff's privacy rights, and the discharge injunction;

B.      Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.      Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Respectfully submitted,

*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

December 31, 2020                     */s/ James J. Manchee*
Date                                 James J. Manchee

-21-